

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CANDY STONEMAN,

    Plaintiff,

v.                                                  CIVIL ACTION NO. 3:11CV855

ASR RESTORATION, INC., t/a
SERVPRO OF RICHMOND, INC.,
Serve: Lee Robert Arzt
       6802 Paragon Place
       Suite 220
       Richmond, Virginia 23230

and

SERVPRO INDUSTRIES, INC.,
Serve: Randall A Isaacson
       801 Industrial Boulevard
       Gallatin, Tennessee 37066

    Defendants.

## COMPLAINT

COMES now the plaintiff, Candy Stoneman ("Stoneman" or "Plaintiff"), by counsel, pursuant to Rule 8 of the Federal Rules of Civil Procedure, and states as follows for her Complaint against the defendants Servpro of Richmond and Servpro Industries, Inc. (collectively, "Servpro" or "Defendants"):

### INTRODUCTION

1.    Plaintiff Ms. Stoneman brings the instant action for unlawful employment practices by Defendants in violation of the Americans with Disabilities Act, 42 U. S. C. § 12101 et seq. ("ADA") and the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA").

1

## JURISDICTION

2. Federal jurisdiction for bringing actions under the ADA and FMLA is proper pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction of all civil actions arising under the laws of the United States.

3. Venue for this cause is proper pursuant to 28 U.S.C § 1391 (b)(1) and (2), and Local Rule 3(C) of the Rules of the United States District Court for the Eastern District of Virginia, since Defendant resides in this district and division (Richmond Division), and it is where the cause of action arose. Local Rule 3(B)(4) states that the City of Richmond is designated to be within the Richmond Division of the Eastern District of Virginia, as set forth in 28 U.S.C. §127.

## PARTIES SUED

4. Servpro is a "covered entity" within the meaning of the ADA as set forth in 42 U.S.C. § 12111(2).

5. Servpro is an "employer" within the meaning of the ADA as set forth in 42 U.S.C. § 12111(5)(A).

6. Servpro is an "employer" within the meaning of the FMLA as set forth in 29 U.S.C. § 2611(4)(A).

## FACTS

7. Ms. Stoneman is a fifty-one-year-old female who lost one kidney, part of her pancreas, her spleen and part of her stomach in 1974.

8. Ms. Stoneman was hired by Servpro in March 1976. At that time, she was working for her father, who ran Servpro in Fredericksburg, Virginia.

9. In 1988, Ms. Stoneman began working for Defendant Servpro of Richmond, Virginia, in the warehouse.

10. On or about 2001, Ms. Stoneman was promoted to the position of Project Manager/Estimator.

11. As Project Manager/Estimator, Ms. Stoneman was responsible for, among other things: scheduling visits and coordinating appointments, preparing job estimates, reviewing job scope, providing assistance to productions staff, monitoring subcontractor work, performing inspections, managing works in progress, and responding to business related inquiries.

12. In June of 2008, Ms. Stoneman was diagnosed with rheumatoid arthritis. She informed Servpro of this diagnosis.

13. Ms. Stoneman also discovered she had cancerous polyps which caused severe gynecological symptoms. In October 2008, Ms. Stoneman had a surgery to remove these polyps. In March 2009, Ms. Stoneman had a second surgery to address excessive pain and bleeding related to the polyps.

14. In February 2009, Ms. Stoneman developed a painful kidney stone that could not be passed and was determined to be inoperable.

15. While preparing for her March 2009 polyp surgery, Ms. Stoneman made arrangements so that she could continue to perform essential job functions remotely. This included Ms. Stoneman's purchase of a laptop, which she purchased with personal funds.

16. Ms. Stoneman returned to the Servpro office following her March 2009 polyp surgery. Upon her return, Servpro presented Ms. Stoneman with a list of new job roles and responsibilities. Servpro cut Ms. Stoneman's commissions in half from 5.00% to 2.50%.

17. Following her return from the March 2009 surgery, Ms. Stoneman began to feel

increasing pressure from management and hostility directed at her related to her numerous health issues. This pressure and hostility was not directed at her work performance, which continued to exceed that of other Servpro employees. Instead, this pressure and hostility was directed at Ms. Stoneman as a result of her continuing need for medical treatment related to her qualifying disabilities.

18. Following her return from the March 2009 surgery, Servpro informed Ms. Stoneman that hours would be deducted from her time for medical appointments.

19. Ms. Stoneman continued to meet deadlines despite ongoing sickness, pain, and health problems related to her disabilities.

20. At various points, Ms. Stoneman was offered accommodations by Servpro. Many of the accommodations never materialized or were not taken seriously by Servpro.

21. By letter dated June 10, 2009, Ms. Stoneman was notified that, as a condition of continued employment, Servpro required that she submit to a "medical evaluation" by Dr. Walter Viewig.

22. Ms. Stoneman was given the June 10, 2009, letter during a meeting at Servpro of Richmond on June 11, 2009. At that time, Ms. Stoneman was in severe kidney pain and requested that she be allowed to see her treating physician.

23. Ms. Stoneman was informed that if she went to see her doctor and did not immediately call Dr. Viewig, she would be terminated from her position at the company.

24. When Ms. Stoneman insisted on presenting to her treating physician, she was terminated by Servpro.

25. During her employment with Servpro, Ms. Stoneman managed serious health issues relating to her disability, which required routine medical attention. These medical issues

included, but were not limited to, disability related to her kidney, pancreas, spleen and/or stomach, rheumatoid arthritis, thyroid function, kidney and bladder infections, respiratory issues, and gynecological disability.

26. Despite these health issues, Ms. Stoneman was able to work and her work performance at all times met or exceeded Servpro's legitimate expectations.

27. Ms. Stoneman informed Servpro of her serious health conditions, communicated with Servpro regarding these conditions.

28. Servpro employee(s) made numerous and repeated comments to Ms. Stoneman about the amount of money she was costing the company.

29. At all relevant times herein Servpro regarded Ms. Stoneman as disabled.

30. Servpro was openly hostile toward Ms. Stoneman on account of her disabilities; refused to provide reasonable accommodations it promised Ms. Stoneman; adversely modified the terms and conditions of her employment due to her disabilities; retaliated against Ms. Stoneman based on her disability; wrongfully discharged Ms. Stoneman based on her disability; and intentionally and willfully failed to notify Ms. Stoneman of her FMLA rights related to her disabilities.

## COUNT I – ADA DISCRIMINATION

31. The allegations set forth in Paragraphs 1 through 30 above are incorporated by reference as if fully set forth herein.

32. The ADA was enacted to protect qualified individuals with disabilities from unlawful discrimination.

33. At all relevant times herein, Servpro employed 15 or more employees.

34. At all relevant times herein, Ms. Stoneman is a "qualified individual with a

disability" within the meaning of the ADA as she is substantially limited in one or more of the following major life activities: performing manual tasks, standing, walking, lifting, bending, working, function of the immune system, normal cell growth, digestive function, bowel function, bladder endocrine function, and reproductive function.

35. At all relevant times herein, Ms. Stoneman was able to perform the essential functions of her job with or without reasonable accommodation.

36. Ms. Stoneman was subject to unwelcome harassment by Servpro.

37. Servpro's harassment of Ms. Stoneman was based on her qualifying disability.

38. The harassment was so severe that it altered the terms and conditions of Ms. Stoneman's employment.

39. Servpro was at all times aware of and an active participant in such harassment.

40. As a result of Servpro's unlawful acts, Ms. Stoneman suffered monetary damages, expenses, loss of compensation and related benefits, loss of opportunities, pain, suffering, humiliation, anger, mental distress, other pecuniary and non-pecuniary damages, and will continue to suffer such losses in the future.

41. Servpro willfully, recklessly and intentionally discriminated against Ms. Stoneman with willful and/or reckless indifference to Ms. Stoneman's rights to be free from discrimination based on protected status as qualified individual with a disability.

## COUNT II – ADA WRONGFUL DISCHARGE

42. The allegations set forth in Paragraphs 1 through 41 above are incorporated by reference as if fully set forth herein.

43. Ms. Stoneman was discharged by Servpro on June 11, 2009

44. At the time of her termination, and for more than twenty years preceding her

termination, Ms. Stoneman was fulfilling and often succeeding Servpro's legitimate expectations. In fact, Ms. Stoneman was on most occasions outperforming her coworkers.

45. At the time of her discharge, Ms. Stoneman was having significant medical issues related to her disability that required regular treatment.

46. Servpro attempted to prevent Ms. Stoneman from receiving necessary treatment.

47. As her need for treatment increased, Servpro adversely modified the terms and conditions of her continued employment.

48. Upon information and belief, Servpro modified the terms and conditions of Ms. Stoneman's employment as part of a concerted effort to get her to resign from her position with the company.

49. Ms. Stoneman did not resign and continued to meet the legitimate expectations of her position. In response, Servpro imposed additional requirements including submission to a "medical examination" as a condition of continued employment.

50. Servpro created a situation wherein Ms. Stoneman was forced to choose between presenting to her doctor for necessary, emergency treatment and continued employment with the company.

51. Ms. Stoneman informed Servpro that she needed medical attention from her treating physician and was immediately terminated.

52. The only reasonable inference drawn from these facts is that Servpro unlawfully discharged Ms. Stoneman due to its prejudices and discriminatory indifference to her qualifying disabilities.

53. As a result of Servpro's unlawful acts, Ms. Stoneman has suffered monetary damages, expenses, loss of compensation and related benefits, loss of opportunities, pain,

suffering, humiliation, anger, mental distress, other pecuniary and non-pecuniary damages, and will continue to suffer such losses in the future.

54. Servpro willfully, recklessly and intentionally discharged Ms. Stoneman with willful and/or reckless indifference to Ms. Stoneman's rights to be free from discrimination based on protected status as qualified individual with a disability.

## COUNT III – ADA RETALIATION

55. The allegations set forth in Paragraphs 1 through 54 above are incorporated by reference as if fully set forth herein.

56. Ms. Stoneman engaged in activity protected by the ADA when she requested leave to present to her doctor for treatement.

57. Servpro retaliated against Ms. Stoneman for making this request by terminating her position with the company.

58. As a result of Servpro's unlawful acts, Ms. Stoneman has suffered monetary damages, expenses, loss of compensation and related benefits, loss of opportunities, pain, suffering, humiliation, anger, mental distress, other pecuniary and non-pecuniary damages, and will continue to suffer such losses in the future.

59. Servpro willfully, recklessly and intentionally retaliated against Ms. Stoneman with willful and/or reckless indifference to Ms. Stoneman's rights to be free from discrimination based on protected status as qualified individual with a disability.

## COUNT IV – FMLA

60. The allegations set forth in Paragraphs 1 through 62 above are incorporated by reference as if fully set forth herein.

61. At all relevant times herein, Servpro employed 50 or more employees.

62. At all relevant times herein, Ms. Stoneman had a serious health condition that required her to take periods of leave from work.

63. Ms. Stoneman required periods of intermittent leave as a medical necessity.

64. At all relevant times herein, Servpro was aware of Ms. Stoneman's serious health condition.

65. Servpro did not provide Ms. Stoneman with notice of her rights to take protected leave pursuant to the FMLA, as required by statute.

66. Upon information and belief, Servpro knowingly and willfully withheld information from Ms. Stoneman regarding her FMLA rights.

67. As a result, Servpro interfered with, restrained, and/or denied Ms. Stoneman's right to exercise her FMLA rights.

68. Following interference, Servpro terminated Ms. Stoneman for seeking what would have been FMLA protected leave to receive necessary medical treatment for her serious health condition.

69. As a result of Servpro's unlawful acts, Ms. Stoneman has suffered monetary damages, expenses, loss of compensation and related benefits, loss of opportunities, pain, suffering, humiliation, anger, mental distress, other pecuniary and non-pecuniary damages, and will continue to suffer such losses in the future.

70. Servpro willfully, recklessly and intentionally interfered with and discriminated against Ms. Stoneman with willful and/or reckless indifference to Ms. Stoneman's rights to be free from discrimination based on protected status as a protected individual under the FMLA.

**REQUESTED RELIEF**

**WHEREFORE,** Ms. Stoneman seeks the fullest relief available under the laws,

including but not limited to the following:

    a. Actual monetary losses;

    b. Compensatory damages;

    c. Punitive damages;

    d. Liquidated damages, if appropriate;

    e. Back pay for any lost wages, benefits, or other compensation;

    f. Reinstatement to the Project Manager/Estimator position, or front pay in lieu of reinstatement;

    g. Pre-judgment interest;

    h. Reasonable attorneys' fees, and associated expenses and costs related to this action; and

    i. any other monetary or equitable relief allowable by law.

Ms. Stoneman also respectfully requests leave to amend these pleadings and the relief requested as additional evidence and damages may warrant. Finally, Ms. Stoneman respectfully demands a **Trial by Jury**.

                                        Respectfully submitted,
                                        **CANDY STONEMAN**
                                        Plaintiff

                                        By: _____

Jonathan Halperin, VSB No. 32698
Seth Carroll, VSB No. 74745
Geoff McDonald & Associates, P.C.
3315 West Broad Street
Richmond, VA 23230
Phone: (804) 359-4446
Facsimile: (804) 359-5426
jhalperin@mcdonaldinjurylaw.com
scarroll@mcdonaliinjurylaw.com
Attorneys for Plaintiff Candy Stoneman

10