IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CANDY STONEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:11CV855-HEH |
| ) | |
| ASR RESTORATION, INC., t/a, ) | |
| SERVPRO OF RICHMOND, INC., ) | |
| ) | |
| and ) | |
| ) | |
| SERVPRO INDUSTRIES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Granting in Part and Denying in Part Defendant's Motion to Dismiss)

This matter is before the Court on a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) filed by Defendant ASR Restoration, Inc., t/a Servpro of Richmond, Inc. ("Servpro") (Dk. No. 6). Plaintiff Candy Stoneman ("Plaintiff") has filed a response (Docket No. 9), and Servpro has replied (Docket No. 12). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff's Amended Complaint contains the following factual allegations. The events giving rise to this litigation center around Plaintiff's employment with Servpro.

1

Her employment history dates back to 1976, when she began working at the Servpro located in Fredericksburg. In 1988, she transferred to the Servpro located in Richmond, Virginia, initially taking a position working in the warehouse. Servpro promoted Plaintiff to the role of Project Manager/Estimator around 2001. According to Plaintiff, her responsibilities in this role included preparing job estimates, providing assistance to production staff, monitoring subcontractor work, and responding to various other business related inquiries. (Am. Compl. at ¶ 9.)

In 2008, Plaintiff allegedly began experiencing significant health problems. Doctors initially diagnosed her with rheumatoid arthritis in June of 2008. Plaintiff also claims that physicians discovered cancerous polyps requiring surgical removal around this same time. According to her Amended Complaint, Plaintiff underwent two surgeries to remove and treat the polyps in October 2008 and March 2009. In February 2009, Plaintiff also developed an inoperable kidney stone, which allegedly caused her great pain. Nevertheless, Plaintiff claims that throughout her extensive medical treatments, she consistently made arrangements to work remotely. She even claims that she purchased a laptop computer, which Plaintiff financed with personal funds. (Id. at ¶ 13.)

Following her return to work after the second surgery in March 2009, Plaintiff alleges that Servpro altered her responsibilities and reduced her commission from 5.00% to 2.50%. (Id. at ¶ 14.) She also asserts that she faced "increasing pressure from management and hostility directed at her related to her numerous health issues." (Id. at ¶ 15.) At this time, Servpro also informed Plaintiff that "hours would be deducted from her time for medical appointments." (Id. at ¶ 16.) Although Plaintiff admits that Servpro

initially offered her unspecified accommodations for her health problems, she claims that these accommodations never materialized. (Id. at ¶ 20.)

The presumably deteriorating relationship came to a head on June 11, 2009, when Plaintiff received a letter from Servpro requiring her to submit to a medical evaluation by a specified physician as a condition of her continued employment. Coincidentally, Plaintiff claims that she was in severe kidney pain at the time she received the letter and "requested that she be allowed to see her treating physician." Servpro then allegedly informed her that "if she went to see her doctor and did not immediately call [Servpro's designated physician], she would be terminated from her position at the company." (Id. at ¶¶ 20-21.) Plaintiff insisted on visiting her treating physician and was subsequently terminated by Servpro.

On November 24, 2009, Plaintiff filed a Charge of Discrimination with the EEOC ("EEOC") and the Virginia Human Rights Council against Servpro. (Def.'s Mem. Supp. Mot. Dismiss Under F. R. Civ. P. 12(b)(1) [hereinafter "Def.'s Mem."], Ex. 1.) On September 28, 2011, the EEOC issued a Dismissal and Notice of Rights letter. Plaintiff then filed her initial Complaint on December 27, 2011, and an Amended Complaint on February 2, 2012. In her Amended Complaint, Plaintiff alleges harassment, wrongful discharge and retaliation under the Americans with Disabilities Act ("ADA"). Servpro filed the instant Motion to Dismiss for lack of subject matter jurisdiction. Specifically, Servpro contends Plaintiff has failed to exhaust her administrative remedies as to each of her claims; therefore, this Court lacks subject matter jurisdiction.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction. In such a motion to dismiss, the burden rests with the plaintiff, the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996), *citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A motion to dismiss pursuant to Rule 12(b)(1) can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may challenge the complaint on its face, asserting that it fails to state a claim upon which subject matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338. In such a challenge, a court assumes the truth of the facts alleged by the plaintiff, thereby functionally affording her the same procedural protection she would receive under Rule 12(b)(6) consideration. *See Id.*

A Rule 12(b)(1) dismissal, however, may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous. *Adams*, 697 F.2d at 1219; *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

### III. ANALYSIS

In its Motion, Servpro moves to dismiss all of Plaintiff's claims on the grounds that she failed to exhaust her administrative remedies before the EEOC. Prior to filing suit under the ADA, as under Title VII, a plaintiff must exhaust all administrative remedies by filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 12117(a) (incorporating the procedures set forth in Title VII); 42 U.S.C.A. § 2000e-5(f)(1); *see also Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Failure to do so deprives the federal courts of subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir.1995) (holding that removal of Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction).

Consequently, the contents of the EEOC charge determine the scope of a plaintiff's right to file a federal lawsuit. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or

5

ADA] lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *Jones*, 551 F.3d at 300–01. Thus, "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans*, 80 F.3d at 962–63. Lawyers, however, do not typically complete the administrative charges, and so courts generally construe them liberally. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).

The Fourth Circuit has made clear that the factual allegations presented in the formal litigation must correspond to those set forth in the administrative charge. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005). For example, a plaintiff's claim generally will be barred if the EEOC charge alleges discrimination on one basis, such as race, and he or she introduces another basis, such as sex, in formal litigation. *See Bryant*, 288 F.3d at 132–33; *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination). A claim will also typically be barred if the administrative charge alleges one type of discrimination and the claim encompasses another type. For example, a plaintiff may not allege failure to promote in his or her EEOC charge only, and then allege discrimination in pay and benefits before the Court. *See Evans*, 80 F.3d at 963–64; *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863–64 (4th Cir. 1982) (claim of discriminatory failure to rehire barred because EEOC charge only alleged wrongful termination).

Similarly, allegations of a discrete act or acts in an administrative charge will not support a subsequent claim alleging a broader pattern of misconduct. *See Dennis v. Cnty. of Fairfax*, 55 F.3d at 151, 153, 156-57 (4th Cir. 1995) (charge that alleged discrimination in defendant's disciplining did not cover broader pattern of discrimination in hiring, training, and promotion). By the same token, vague or overly broad factual foundations provided in the administrative charge may not support a claim that is later presented in subsequent litigation. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (no exhaustion of administrative remedies where facts incorporated into the charge, including after-hours phone calls and touching, were too inconclusive to suggest sexual harassment).

At the same time, however, so long as the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000) (plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged she was retaliated against by management because she complained about supervisor's sexual harassment); *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *see also Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("The crucial element of a charge of discrimination is the factual statement contained therein.") (internal quotation marks omitted); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.") (internal quotation marks omitted).

7

Here, Servpro challenges subject matter jurisdiction as to Plaintiff's claims for harassment, wrongful termination, and retaliation. The Court will address each these in turn.

### A.

To state a hostile work environment or harassment claim under the ADA, a plaintiff must prove the following: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001); *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999).

In her Amended Complaint, Plaintiff alleges that she is a "qualified individual" within the meaning of the ADA as a result of her health impairments. (Am. Comp. at ¶ 32.) Similarly, Plaintiff's EEOC charge alleged that she suffers from a number of disabilities including "kidney issues, rheumatoid arthritis, and gynecological issues." (Def.'s Mem., Ex. 1.) Plaintiff claimed in her EEOC charge that her supervisors began to "take issue with [her] performance," resulting in changes to her work duties and compensation. The charge also stated that she was informed on June 11, 2009 "that if [she] did not call a psychiatrist, [she] would be terminated." (Id.) After refusing to do so, and after "months of harassment by the owners," Plaintiff alleged that she was fired.

Contrary to Defendant's assertions, Plaintiff's factual allegations of harassment in her EEOC charge mirror those in the formal litigation. *See Smith v. First Union Nat'l*

*Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000). Both the Amended Complaint and the EEOC charge allege harassment by Plaintiff's superiors because of her alleged disabilities, thus describing the same conduct and implicating the same individuals. *See Chacko*, 429 F.3d at 509. Therefore, the connection between the charge and the claim is sufficient, and Servpro's Motion to Dismiss must be denied as to Count I.

*B.*

Next turning to Plaintiff's wrongful discharge claim, Servpro argues that Plaintiff failed to exhaust her administrative remedies by describing disparate wrongful discharge conduct in the Amended Complaint as compared to the EEOC charge. Servpro also alleges that Plaintiff's EEOC charge concedes she was unfit for her duties. Servpro, however, misconstrues both Plaintiff's EEOC charge and the applicable law.

A plaintiff asserting wrongful discharge under the ADA must demonstrate that (1) she is disabled; (2) she was otherwise qualified for her position; and (3) her discharge "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin North America, Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (internal quotations omitted). Servpro claims that Plaintiff provided the EEOC with three factual reasons for her termination which differed from the reason presented in her Amended Complaint. According to Servpro, the EEOC charge asserted that Plaintiff was terminated because: "(1) she was ascribed a mental health issue, (2) she was a safety risk to other employees and (3) the cost of her continued insurance." (Def.'s Mem. at 9.) In contrast, Plaintiff's Amended Complaint alleges that Servpro fired her after she

refused to submit to a medical examination from Servpro's physician and instead demanded medical attention from her treating physician. (Am. Comp. at ¶ 46-51.)

In her EEOC charge as well as her Amended Complaint, however, Plaintiff alleges that she suffered from the same disabilities (rheumatoid arthritis, polyps, and kidney stones) and that she was otherwise fit to fulfill her duties as a project manager. Furthermore, in both her EEOC charge and her Amended Complaint, Plaintiff submits that she was terminated on June 11, 2009, after she refused to consult with Servpro's physician. Plaintiff infers in both documents that this termination resulted from discrimination due to her disabilities. Despite Servpro's argument to the contrary, the reasoning Servpro may have provided Plaintiff for her termination—that she suffered mental health problems and posed a safety risk to other employees—does not impact the analysis for wrongful discharge.

Additionally, Servpro argues that Plaintiff failed to exhaust her administrative remedies because she told the EEOC that she was not performing her job to meet her employer's legitimate expectations. Therefore, in Servpro's opinion, Plaintiff's Amended Complaint cannot effectively allege that she was otherwise qualified for her position. Servpro, however, again misconstrues Plaintiff's EEOC charge. In relevant part, Plaintiff merely averred that "the company started to take issue with [her] performance . . . changing [her] work duties and compensation." (Def.'s Mem., Ex. 1.) The Court does not interpret this statement as a claim that Plaintiff was not performing her job to meet Servpro's *legitimate* expectations. Rather, read in the context of the EEOC charge, the statement appears merely to contend that Servpro outwardly

10

questioned Plaintiff's performance, ostensibly to conceal the alleged discriminatory intent behind the reduction in her wages and alterations to her employment duties.

For these reasons, the Court finds that Plaintiff has exhausted her administrative remedies with respect to her claim for wrongful termination. Consequently, Servpro's Motion to Dismiss must be denied as to this portion of the Amended Complaint.

### C.

Turning finally to the claim for retaliation alleged in Count III of the Amended Complaint, Servpro maintains that it must be dismissed because Plaintiff failed to state a claim for retaliation before the EEOC. In support of this argument, Servpro points to the fact that Plaintiff both failed to check the box marked "retaliation," and did not allege any retaliatory actions in the body of the EEOC charge.

In general, claims of retaliation may be raised for the first time in federal court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). This exception to the exhaustion requirement, however, does not apply when, as in the instant case, the alleged retaliation occurred before the plaintiff filed his or her administrative complaint. *Wilson v. Dimario*, No. 97-2252, 1998 WL 168346, at *2 (4th Cir. Mar. 31, 1998); *Keegan v. Dalton*, 899 F. Supp. 1503, 1511 (E.D. Va. 1995). Here, Plaintiff asserts that she "engaged in activity protected by the ADA when she requested leave to present to her doctor for treatment" on the day of her termination. (Am. Compl. at ¶ 54.) Despite the fact that this alleged retaliation occurred before she filed her EEOC Charge, Plaintiff checked only the box for "Disability," and failed to check the box labeled "Retaliation." (Def.'s Mem., Ex. 1.)

"EEOC complaints filed by individuals acting without the assistance of an attorney are not so strictly construed that a failure to check the 'Retaliation' box on the EEOC charge form is necessarily fatal to the later assertion of a retaliation claim." *Williams v. Mancom, Inc.*, 323 F.Supp.2d 693, 695 n. 2 (E.D. Va. 2004) (citing *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004)). In the immediate case, however, Plaintiff received the assistance of her then attorney in preparing her EEOC charge. (Def.'s Mem. at 7.)

Even assuming Plaintiff's failure to check the "Retaliation" box is not fatal, she subsequently failed to state a substantive claim for retaliation in the charge. Turning to the body of the EEOC charge, Plaintiff detailed her work history at Servpro, asserting that from 1997 to late 2008, her work performance was "excellent" and she maintained positive relationships with customers and vendors. Then in late 2008, she alleged that her supervisors began "to take issue with [her] performance . . ., changing [her] work duties and compensation." (Def.'s Mem., Ex. 1.) She further professed a belief that this discrimination stemmed from her disabilities, which included kidney issues, rheumatoid arthritis, and gynecological issues, as well as two recent surgeries. According to her EEOC charge, her supervisor threatened to terminate her after the first surgery and then changed her work duties and compensation after the second surgery. Ultimately, on June 11, 2009, her supervisor allegedly threatened to terminate her employment if she did not consult with a psychiatrist. Plaintiff claimed that she was fired after she refused to do so. (*Id.*) Absent from this charge, however, is any allegation that Servpro retaliated against

12

Plaintiff "when she requested to leave to present to her doctor for treatment," as she now charges in her Amended Complaint before this Court.[1]

Furthermore, the EEOC Notice does not verify that the EEOC investigated a retaliation claim because the EEOC did not issue a reasonable cause determination. *See* 29 C.F.R. § 1601.21(a) ("After completing its investigation, where the Commission has not settled or dismissed a charge or made a no cause finding . . . the Commission shall issue a determination that reasonable cause exists to believe that an unlawful employment practice has occurred or is occurring under Title VII or the ADA.") Rather, the EEOC issued Plaintiff a right to sue because it was unable to conclude within the statutory deadline whether a violation had occurred. Thus, it is unclear that the EEOC investigated such a claim. As a result, Defendant's Motion to Dismiss as to the retaliation claim must be granted.

## IV. CONCLUSION

For the reasons stated above, Defendant Servpro's Motion to Dismiss will be granted in part and denied in part. Servpro's Motion to Dismiss will be denied as to Plaintiff's claims in for discrimination (Count I) and wrongful discharge (Count II). Servpro's Motion to Dismiss Plaintiff's claim for retaliation alleged in Count III will be granted.

---

[1] Although the Court need not reach the issue, it shares Servpro's skepticism that requesting to see one's doctor constitutes a protected activity under the statute.

13

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 10, 2012
Richmond, VA